UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

**JOEL LEE COMPTON**,

       Petitioner,

vs.

                                                              No. CIV 1:94-1155 JP/LCS

**RON LYTLE, Warden**,[1]

       Respondent.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**

**NOTICE**

Within ten days after receiving a copy of these Proposed Findings and Recommended Disposition a party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to said Proposed Findings and Recommended Disposition. A party must file any objections within the ten day period allowed if that party desires review by the district court. In the absence of timely-filed objections, no review will be undertaken.

**PROPOSED FINDINGS**

    A.    **Historical Background**

This petition for habeas corpus relief under 28 U.S.C. § 2254 arises out of Petitioner Joel Lee Compton's ("Compton") state court convictions for capital murder and aggravated assault. These convictions resulted in a sentence of death for the capital murder (later commuted to a life sentence) and eighteen months imprisonment for the aggravated assault. The underlying event leading to these convictions is the shooting death of Albuquerque Police Officer Gerald Cline on

---

[1] Pursuant to Rule 2(a) of the Rules Governing Section 2254 Cases, Ron Lytle is hereby substituted for John Shanks as the proper Respondent in this cause.

February 24, 1983.  Much of the factual background relating to the state court convictions can be found at *State v. Compton*, 104 N.M. 683, 726 P.2d 837, *cert. denied*, 479 U.S. 890 (1986), and will not be repeated in detail here.[2]

### B. Procedural Background

On October 12, 1994, Compton filed this 2254 action, raising three claims as a basis for habeas relief.  (Pet. at 8-17).  Ground II (spousal privilege claim) was dismissed by the district court at an early stage of this case.  (Order of Oct. 3, 1995).  The two remaining claims are (1) the alleged violation of Compton's Fifth Amendment right to remain silent when the prosecution used his allegedly coerced confession at trial and (2) ineffective assistance of trial counsel for counsel's comment during opening statement that Compton had shot the victim and counsel's failure to delve into a defense centering on Compton's alleged hypoglycemic state.[3]  *Id*.  The ineffective assistance of counsel claim also touches on the failure to investigate and prepare a defense, as well as counsel's alleged failure to keep Compton informed of defense strategy and tactics.  *Id*.

After final disposition of Ground II of Compton's petition, this Court entered a briefing schedule to address the remaining claims.  After the filing of Compton's brief-in-chief, Respondent filed a motion to dismiss for failure to exhaust all available state remedies.  That motion was denied on April 7, 1997.

---

[2]Because Compton filed the instant petition in 1994, well before the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 and prior to the expiration of the grace period pronounced in *United States v. Simmonds*, 111 F.3d 737 (10th Cir. 1997), this petition is not time-barred under the one-year statute of limitations provided for in the Act.

[3]"Hypoglycemia" is defined as having "[a]n abnormally small concentration of glucose in the circulating blood."  STEDMAN'S MED. DICTIONARY 836 (26th ed. 1995).

Thereafter, the Court granted Respondent's unopposed motion for an evidentiary hearing. That hearing was held on September 9, 1997. After allowing for the taking of several post-hearing depositions and the filing of post-hearing briefs, the Court closed the evidentiary record. The final brief was submitted on December 29, 1997.

### C. Fifth Amendment Claim

In Ground One of his petition, Compton takes issue with the use of his taped confession at trial, alleging that this resulted in a violation of his Fifth Amendment right to remain silent. (Pet. at 8-9). He claims in his petition that he invoked his right to an attorney and his right to remain silent on numerous occasions prior to his confession.

"Incriminating statements obtained by government acts, threats, or promises that permit the defendant's will to be overborne are coerced confessions running afoul of the Fifth Amendment and are inadmissible at trial as evidence of guilt." *United States v. Short*, 947 F.2d 1445, 1449 (10th Cir. 1991), *cert. denied*, 503 U.S. 989 (1992). In making a determination on the voluntariness of a confession, a court should consider all of the surrounding circumstances. *Id*. These may include such considerations as police coercion, the length and location of the interrogation, its continuity, and the defendant's maturity and education, as well as his physical and mental condition." *Withrow v. Williams*, 507 U.S. 680, 693 (1993). Another factor that may be considered is any failure by the police to advise the defendant of his Miranda rights and to have counsel present during any interrogation. *Id*. at 693-94.

In his brief on the merits, Compton makes only scant reference to this claim. (Pet'r's Mem. Br. at 23). In his final memorandum brief, he makes no mention of this claim, nor was it raised during the evidentiary hearing. Nonetheless, I will address this claim on its merits, based

3

upon the voluminous evidence in the record applicable to this ground for relief.

The record indicates that Compton was read his Miranda rights by the arresting officer shortly after the time of Compton's arrest. (Resp't's Corrected Answer Br., Ex. A). After some brief questioning by that officer, Compton informed the officer that he had "shot the guy." *Id*. Later, after being taken to a medical facility to obtain treatment for a deep cut in his forearm, Compton told his attending physician that he had "shot a cop." (Resp't's Corrected Answer Br. at 20).

Prior to trial, Compton's attorneys successfully had the confession to the officer suppressed. (Resp't's Corrected Answer Br. at 2; Tr. of Evid. Hr'g at 33). Nonetheless, Compton's attorneys decided to play the tape of that confession before the jury. *Id*. This decision was in line with the defense strategy of a "diminished capacity defense," which focused on Compton's high blood/alcohol level on the night of the incident. (Pet'r's Final Mem. Br. at 13). It was decided by the defense that the tape of the confession to the officer would be played to demonstrate Compton's high intoxication level to the jury. (Resp't's Corrected Answer Br. at 3).

Essentially, Compton uses the Fifth Amendment argument as a guise in which to attack counsel's performance. Thus, this argument more appropriately belongs as part of his ineffective assistance argument and I will address this contention when I consider that claim. However, by solely applying a Fifth Amendment analysis, I will make a recommendation as to this claim for relief.

In my view, Ground I of the petition is without merit. There is ample evidence in the record to demonstrate that the arresting officer read Compton his Miranda rights on at least two

4

occasions prior to any questioning.  (*See, e.g.,* Resp't's Corrected Answer Br., Ex. A).  The record does not indicate that Compton was subjected to any threats, promises or any other form of coercion prior to the confession.  *See Short*, 947 F.2d at 1449.  Nor was he interrogated for any length of time prior to the confession--he confessed to killing the officer after one question at the scene of the arrest.  (Resp't's Corrected Answer Br., Ex. A).  The only consideration weighing in Compton's favor is his high level of intoxication upon his arrest.  Nonetheless, I find that, under all of the surrounding circumstances, *Short*, 947 F.2d at 1449, the confession made by Compton to the arresting officer was voluntary.  Therefore, I recommend that Compton not be granted habeas relief based upon his Fifth Amendment claim as to the voluntariness of his confession to the police officer.

  Similarly, I find no merit to the any argument that Compton's Fifth Amendment rights were violated when his confession to medical personnel was used at trial.  (Resp't's Corrected Answer Br. at 20-21).  Although not raised in his petition, Compton makes a brief reference to this issue in his motion for an evidentiary hearing, filed February 3, 1997.  (Pet'r's Mot. for Evid. Hr'g at 25).  The record demonstrates that Compton's incriminating statements to his medical attendants were entirely voluntary.  *Id*. at 12.  Furthermore, there was no basis for suppressing this statement due to any patient-physician privilege since that privilege did not exist in New Mexico in 1983.  (*See* Resp't's Corrected Answer Br. at 21).

  Finally, I note that during the evidentiary hearing, Compton testified that he agreed that the tapes of his confession to the arresting officer should be played before the jury "[b]ecause they clearly showed how drunk I was and the frame of mind that I was in that night."  (Tr. of Evid. Hr'g at 33).  Hence, Compton agreed with his attorneys that the tapes should be played before the

jury, notwithstanding the earlier granting of Compton's motion to suppress. For these reasons, I find no Fifth Amendment violation due to any statements to medical personnel and recommend rejection of the same.

### D. Ineffective Assistance of Counsel

Ground Three of Compton's petition alleges that he received ineffective assistance of counsel. (Pet. at 12-17). At the evidentiary hearing and in his final brief, Compton more accurately described this claim by focusing it on two items. First, that his trial counsel's performance was ineffective due to counsel's admission at trial and overall trial strategy in which counsel admitted that Compton had shot the police officer, and for counsel's pursuit of a diminished capacity defense. (Pet'r's Final Mem. Br. at 34-42). Second, that trial counsel's performance was ineffective for failing to integrate Compton's alleged condition of hypoglycemia into his diminished capacity defense. (Pet'r's Final Mem. Br. at 42-46).

In order to prevail on a claim of ineffective assistance of counsel, a convicted defendant "must show that counsel's representation fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and that the deficient performance prejudiced the defendant. *Id*. at 687. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. In applying these precepts, a court must be mindful that a petitioner must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance [that] 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). A claim of ineffective assistance "must be reviewed from the perspective of counsel at the time," *Porter v.*

*Singletary*, 14 F.3d 554, 558 (11th Cir.), *cert. denied*, 513 U.S. 1009 (1994), and thus may not be predicated on "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689.

      **1.**      **Diminished Capacity Defense and Failure to Investigate**

Compton first attacks his trial counsel's strategy of acknowledging in opening statement that Compton shot the police officer. (Pet. at 8-9). According to lead defense counsel, this comment to the jury was in line with pursuing a strategy of a diminished capacity defense. Pursuant to this theory, the defense would admit that Compton shot the police officer, but that his diminished capacity negated any intent to commit the crimes charged. After investigating other possible theories, the defense team believed that their best possible defense was to argue to the jury that Compton's high blood-alcohol level precluded him from having the requisite intent to commit first-degree murder. (*See* Dep. of Murdoch at 12-16).

The record indicates that this strategic decision was based on sound reasoning. First, the state had strong evidence that Compton was at the scene of the murder and that he had a rifle in his possession shortly before the murder. (Dep. of Murdoch at 12-13). In short, it was clear to both the prosecution and the defense that "it would have been a difficult sale to the jury to say that [Compton] had not been the one who shot Officer Cline." (Dep. of McGinn at 8; Dep. of Murdoch at 13).

Another reason for pursuing a diminished capacity defense was Compton's extremely high blood-alcohol level, which was determined to be between .20 and .27 at the time of the incident. (Tr. of Evid. Hr'g at 30). Thus, the defense focused on showing the jury that Compton's intoxicated state negated the intent necessary for a first-degree murder conviction. (Dep. of Murdoch at 13). This was determined to be the defense's best option "to, if not excuse

7

[Compton] of the act, lessen the degree of severity of the act." *Id*.

A third reason for the defense strategy centers on the fact that this was a death penalty case. Based upon strong evidence that Compton had shot the police officer, a primary goal of the defense team was to lessen the severity of the crime, possibly to second-degree murder, and thereby keep their client from receiving a sentence of death. (Tr. of Murdoch at 12-13).

During the evidentiary hearing, Compton's attorney asserted that there are certain situations where a court will presume prejudice in an ineffective counsel petition. (Tr. of Evid. Hr'g at 8-10). One of these situations is where trial counsel essentially abandons his client by admitting his client's guilt. *See Davis v. Executive Director of Dept. of Corrections*, 100 F.3d 750, 756-57 (10th Cir. 1996), *cert. denied*, 117 S.Ct. 1703 (1997); *United States v. Williamson*, 53 F.3d 1500, 1510-11 (10th Cir.), *cert. denied*, 116 S.Ct. 218 (1995). According to Compton, this "presumption of prejudice" should apply here since his trial counsel admitted in opening statement that Compton had shot the police officer. (Tr. of Evid. Hr'g at 8-10).

In *Davis*, petitioner's trial counsel essentially stated during the penalty phase of a capital case that he hated his client and that if it would bring peace to the victims, he would choke the life out of his client in an instant. *Davis*, 100 F.3d at 757. However, later in his argument counsel begged the jury not to impose the death sentence on his client. *Id*. at 758. The Tenth Circuit held that these circumstances did not amount to abandonment of the client. *Id*. at 759.

In *Williamson*, defense counsel argued in closing that he did not dispute the testimony of three police officers, although his client had earlier testified that those officers were lying. *Williamson*, 53 F.3d at 1510. The Tenth Circuit held that this too did not constitute abandonment of the client and thus found no ineffective assistance. *Id*. at 1512.

Under *Williamson*, the test for determining whether counsel's ineffectiveness should be presumed prejudicial is "whether, in light of the entire record, the attorney remained a legal advocate of the defendant who acted with 'undivided allegiance and faithful, devoted service' to the defendant." *Id*. at 1511 (citation omitted). Hence, the test is very fact-intensive. *Id*.

I will apply these principles to the instant case. In my estimation, the statement by Compton's trial counsel, as well as the entire defense strategy of presenting to the jury that Compton had shot the policeman, did not constitute an abandonment and, thereby, a presumption of prejudice. On the contrary, I believe that the statements at issue were part of the larger scheme of presenting a diminished capacity defense. Given the overwhelming evidence that Compton shot the officer, it may have been more detrimental to Compton's case if his attorneys had asserted a defense based on another gunman. In my view, the diminished capacity defense offered Compton the best chance of avoiding a conviction for first-degree murder and the imposition of the death penalty. Therefore, I find that, rather than abandoning their client, Compton's attorneys actually went forward with the best possible defense that was available at the time of trial. *See Strickland v. Washington*, 466 U.S. 668, 689 (1984) (ineffective assistance claim may not be predicated on "the distorting effects of hindsight"). For these reasons, I reject Compton's argument that the actions of his counsel should be viewed as presumptively prejudicial.

In his final brief, Compton also raises the argument that the defense team's trial strategy was constitutionally defective because they failed to allegedly investigate the possibility that Compton was not the gunman. (Pet'r's Final Mem. Br. at 7-12). Specifically, Compton points to the testimony given at the evidentiary hearing by investigator Lawrence Trujillo. There, Trujillo testified that the fact that no witnesses saw a muzzle flash coming from the murder scene, which

9

should have been seen by the patrons facing the scene from the restaurant across the street, indicated to him that the fatal shot may have been fired from an area away from the murder location. (Tr. of Evid. Hr'g at 86).

Although plausible, this theory is substantially outweighed by many other facts tending to show that Compton was the gunman and that the defense attorneys reasonably believed that they could not show a jury that Compton was not the shooter. This includes the reasons outlined in Respondent's final brief, such as Compton confessing to at least two persons that he had killed the officer, the opinion of the criminalistics expert that the officer was shot from a short distance, and the fact that the fatal bullet was never found by the investigators. (Resp't's Corrected Answer Br. at 6). This last point is important because the defense theory of the case was that Compton, who had been fighting with persons involved in prostitution activities in a neighboring room of the hotel, was in Room 24 with his rifle and believed that the person appearing in the doorway was a pimp rather than the police officer. (Tr. of Murdoch at 40). Had the shot been fired from behind the adjacent restaurant from 172 feet away, as Trujillo's theory suggests, the bullet likely would have been found in or near the hotel. *Id*. at 53.

Mr. Trujillo's testimony also goes to Compton's claim of failure to adequately investigate. According to lead counsel, the defense team thoroughly pursued every possible defense theory before deciding on the assertion of a diminished capacity defense:

> We left no stone unturned in Joel Compton's case. We tried to argue that it was one of the pimps with a pistol or some other firearm. We tried to place it on [another person at the hotel]. We explored every possibility of there being even some sort of, you know, shadowy figure hiding behind the truck that fired the round. We thought that all of those were too weak to take to a jury, that they were unbelievable, incredible, and that it was going to be better for us to go with the most credible, therefore the

    strongest defense available, and that was diminished capacity.

*Id*. at 50.  Furthermore, it should be noted that had the defense opted to contend that Compton shot the officer from outside Room 24, where Compton would have clearly seen the police unit parked in the alleyway, it would have destroyed any doubts as to whether Compton knew that the victim was a policeman.

  In my view, the pursuit of a diminished capacity defense was a sound trial strategy in light of these circumstances.  The evidence showing that Compton was at the scene at the time of the murder, that he was enraged at his previous attackers (who had wounded Compton on his right arm), that he had a rifle in his possession shortly before the murder took place, that he had a rifle immediately after the shooting, as well as Compton's oral confession that he was the shooter, left the defense team without the option of pursing a defense based upon another gunman, when there was little or no evidence to suggest that someone else shot the policeman.  These circumstances left the defense team with little choice other than to focus on Compton's high level of intoxication at the time of the murder, which could negate the intent element of first-degree murder, thereby precluding the imposition of the death penalty.

  Essentially, Compton's attack on the pursuit of a diminished capacity defense and, specifically, his counsel's statement at trial that Compton shot the policeman, are nothing more than Compton's taking issue with sound and reasonable trial strategy.  This is not enough to state an ineffective assistance claim.  *See Strickland*, 466 U.S. at 689 (counsel is generally afforded wide latitude in making strategic and tactical choices).  Therefore, I find no merit to this claim and recommend rejection of the same.

  Similarly, as for counsel's alleged failure to investigate, the record shows that Compton's

defense team looked at all of the alternatives in reasonable fashion, while being cognizant of the factual situation. *See Miles v. Dorsey*, 61 F.3d 1459, 1475 (10th Cir. 1995), *cert. denied*, 116 S.Ct. 743 (1996) ("particular decision not to investigate [a theory] must be directly assessed for reasonableness in all the circumstances, applying a heavy deference to counsel's judgments"). They settled on a diminished capacity defense only after reviewing all of these options. For these reasons, I find no merit to this aspect of his ineffective assistance claim as well.

### 2. Failure to Use Hypoglycemia as a Defense Theory

The second part of Compton's ineffective assistance claim focuses on whether the defense attorneys should have used Compton's alleged condition of hypoglycemia as a defense. (Pet. at 14-15). As stated in his final brief, Compton asserts that had his trial counsel used the hypoglycemic defense, it would have indicated or underscored the absence of an intent to kill. (Pet'r's Final Mem. Br. at 42-46).

The record indicates that prior to trial, Compton was seen by Dr. Douglas Ferraro, a psychopharmacologist. (Tr. of Evid. Hr'g at 39; Dep. of Ferraro at 4, 6). Dr. Ferraro met with Compton for about twelve-fourteen hours over a five-month period. (Dep. of Ferraro at 9). Those meetings consisted of Dr. Ferraro exploring Compton's past history of alcohol and drug abuse. *Id*. at 12-14. At trial, Dr. Ferraro testified as an expert regarding the issue of specific intent. *Id*. at 10. In his petition, Compton alleges that Dr. Ferraro suggested that Compton be tested for hypoglycemia. (Pet. at 14). However, Compton was never tested for that condition. *Id*.

According to Compton's trial counsel, Dr. Ferraro talked to the defense team about hypoglycemia and its implications. (Dep. of Murdoch at 64). In the end, the defense believed

that testing Compton for hypoglycemia "would not advance [the defense's] case to such a degree where the testing should be done." (Dep. of Murdoch at 65).

One of the required elements for ineffective assistance of counsel is a showing of prejudice. *Strickland*, 466 U.S. at 687. To establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. In my view, Compton cannot make a showing of prejudice based upon his not being tested for hypoglycemia. First, it is not known whether Compton even had hypoglycemia at the time of his trial. (*See* Dep. of Boyle at 33; Dep. of Ferraro at 29-30). Second, even if he had hypoglycemia, it is pure conjecture to speculate as to how a hypoglycemic condition coupled with intoxication would have changed the jury's rejection of Compton's diminished capacity defense. In summary, Compton has not demonstrated that a defense that included hypoglycemia would have altered the end result.

For these reasons, and after reviewing the entire record, I recommend rejection of Compton's ineffective assistance of counsel claim based upon the failure to use hypoglycemia as part of his defense.

    **3.**    **Failure to Apprise Compton of the Defense Strategy**

The final ineffective assistance argument advanced by Compton is his allegation that his defense team never discussed or made him aware of the strategy of pursuing a diminished capacity defense. (Pet. at 13-14). As pointed out by Respondent, this determination can best be made by measuring the credibility of the parties. (Resp't's Corrected Answer Br. at 18-19).

At the evidentiary hearing, Compton testified that he was never made aware by his attorneys that they would be admitting that he shot the police officer. (Tr. of Evid. Hr'g at 23-

13

24). However, he also testified that his defense team otherwise kept him informed as to many other aspects of the proceedings. (*See* Tr. of Evid. Hr'g at 25, 33-34, 36, 48, 50-52).

According to defense counsel, Compton was kept informed of all proceedings, including the decision to pursue a diminished capacity defense while admitting that Compton shot the policeman. Compton was described by his lead attorney as a "high-maintenance" client. (Dep. of Murdoch at 9). According to counsel, Compton reviewed all police reports, as well as witness' statements, photographs of the crime scene and experts reports provided by the defense. *Id*. at 15. Further, these reports and other materials were discussed with Compton during the preparation stage. *Id*.

Regarding the formulation of the diminished capacity defense, it was lead counsel's recollection that Compton completely understood that defense theory and that "he agreed that it was the best alternative for us to pursue." *Id*. at 103. Along these lines, lead counsel also stated:

> There is no question in my mind that [Compton] concurred with the course that we chose and that he felt it was the best defense available to him. He never indicated that he wanted to, you know, profess his innocence of the charges or tell us that someone else did it. We had affirmation from him all along that this was the appropriate point to take. We had that affirmation. No question.

*Id*. at 105.

The deposition testimony given by Compton's two other trial attorneys is consistent with lead counsel's recollection of events. They too remember that Compton knew that the defense would be pursuing a diminished capacity defense and that his attorneys would be acknowledging that Compton shot the police officer. (Dep. of Alkema at 19-20; Dep. of Farkas at 28-29).

After considering all of these statements given by Compton and his trial attorneys, and

after reviewing the arguments presented in the recently-submitted briefs, I find that Compton has not overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, with regards to whether Compton knew or agreed with the defense theory. In sizing up Compton at the evidentiary hearing, I find that he very likely understood the issues involved both before and during his trial. This is also substantiated by trial counsel's statement that Compton understood all of the issues and that Compton "is not a stupid man." (Dep. of Murdoch at 105). The record also indicates, by Compton's own admission, that trial counsel shared a great deal of information and evidence with Compton prior to trial. (*See, e.g.*, Tr. of Evid. Hr'g at 25, 33-34, 36, 48, 50-52).

Based on the aforementioned reasons, and after reviewing the entire record, I find no merit to Compton's ineffective assistance claim based upon counsel's alleged failure to keep him informed about defense strategy and, specifically, the alleged failure to inform Compton that counsel would be admitting that Compton shot the policeman. Thus, I recommend denial of that claim as a basis for habeas relief as well.

## MAGISTRATE JUDGE'S RECOMMENDED DISPOSITION

For all of the reasons mentioned in my Proposed Findings, I recommend that the remaining Grounds of Compton's petition, Grounds I and III, be denied as a basis for habeas relief. Accordingly, I also recommend that this entire cause be dismissed with prejudice.

_____
Leslie C. Smith
United States Magistrate Judge